Ferdinand W. Roebling, III, v. Commissioner.
Roebling v. Commissioner
Docket No. 110592.
United States Tax Court
1943 Tax Ct. Memo LEXIS 219; 2 T.C.M. (CCH) 392; T.C.M. (RIA) 43324; June 30, 1943
*219 Floyd F. Toomey, Esq., and Ferdinand Tannenbaum, Esq., for the petitioner. Robert S. Garnett, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: By this proceeding petitioner challenges respondent's determination of a deficiency in income tax in the year 1938 in the amount of $14,114.72. The primary issues are whether the transaction in question constituted a reorganization within the meaning of Revenue Act of 1938, section 112 (g) (1) (A), and whether gain to petitioner on the exchange of stock for bonds should be recognized (Revenue Act of 1938, section 112 (b) (3)). [The Facts] All the facts are stipulated and are hereby found accordingly. Petitioner, an individual residing in Trenton, New Jersey, filed a Federal income tax return for the calendar year 1938 with the collector of internal revenue for the first district of New Jersey. On December 5, 1935, petitioner acquired by gift 166 shares of the stock of South Jersey Gas, Electric and Traction Co. (hereinafter referred to as South Jersey). This stock had been acquired by petitioner's donor on March 12, 1914, at a cost of $16,600. South Jersey was a corporation organized on August 31, 1900, under the *220 laws of the State of New Jersey, for the purpose of furnishing electricity and gas for public and private use in that state. On June 1, 1903, South Jersey entered into a lease with Public Service Corporation of New Jersey as lessee, whereunder South Jersey leased to Public Service Corporation of New Jersey for a period of 900 years from June 1, 1903, all of its franchises, plants and other operating equipment together with all land and other property, "excepting, however, its franchise to be a corporation, its corporate seal, its minute, transfer and stock books, * * * [its] books containing the dividend accounts * * *, its office furniture, and its deeds, grants, plats and other instruments and documents containing the evidence of its right and title to the properties now leased, owned or operated by it"; the lease provided that the lessee should pay all interest charges on the lessor's bonded indebtedness, all taxes, insurance and other fixed charges, all sums necessary to maintain, repair, alter, replace, improve or extend the leased properties and the sum of $1,000 annually for the maintenance of the lessor's organization. In addition the lease provided for a semi-annual cash *221 rental which, beginning on December 1, 1908, amounted to $240,000. Pursuant to the terms of the lease all replacements and additions made at the expense of Public Service Corporation of New Jersey were to be the property of South Jersey and subject to the terms and conditions of the lease. On the expiration of the lease all the property subject to its terms was to be returned to South Jersey, except that disposed of in accordance with the terms of the lease. The lease further provided that upon default of the terms of the lease for a period of 30 days, after notice, South Jersey could terminate the lease, reenter and reacquire the property and additions and extensions thereto. Under the terms of the lease South Jersey could enter upon the leased property for the purpose of inspecting it and determining its condition and the character of the management and whether the covenants of the lease were being complied with. Public Service Electric & Gas Company (hereinafter referred to as Public Service) is a corporation organized on July 25, 1924, under the laws of the State of New Jersey for the purpose of furnishing electricity and gas for public and private use in that state. Upon *222 its organization the above-described lease between South Jersey and the Public Service Corporation of New Jersey was duly assigned and its obligations were assumed by Public Service. At all times here material South Jersey had outstanding 60,000 shares of capital stock of the par value of $100 each of which Public Service owned 1,705 shares. On May 10, 1937, Public Service Corporation of New Jersey owned 15,204 shares of South Jersey stock and on various dates between May 10, 1937, and November 17, 1938, Public Service Corporation of New Jersey acquired an additional 569 shares, making a total of 15,773 shares. Other interests owned 42,521 shares in which is included the 166 shares which petitioner owned. The remaining one share was held in the treasury of South Jersey, its owner being unknown. At all times here material substantially all of the voting stock of Public Service was owned by Public Service Corporation of New Jersey. From December 1, 1908, until June 1, 1937, the net rentals received by South Jersey under the above-described lease permitted the payment of a cash dividend to its stockholders at the rate of 8 percent per annum on the par value of its capital stock and *223 a dividend at that rate was regularly paid to its stockholders. Public Service held and operated under similar long-term leases, and as an integral part of its unified electrical system, the properties of many other utility companies. For more than 10 years Public Service and its parent, Public Service Corporation of New Jersey, engaged in a systematic effort to acquire in fee all leased properties. To that end, as favorable opportunity was presented, they purchased stocks of lessor companies. By 1927 Public Service had acquired more than two-thirds of the stocks of certain of the lessor companies, other than South Jersey. In that year these lessor companies undertook, pursuant to the merger laws of the State of New Jersey, but against the dissent of their minority stockholders, to effect a merger with Public Service under a plan whereby their stockholders would receive 6 percent preferred stock of Public Service, par for par, callable after three years at 110, in exchange for their outstanding shares. The New Jersey courts, upon application of the dissenting stockholders, held that the majority stockholders had no equitable right to force the minority to accept preferred stock, *224 redeemable within three years, for stock whose dividends "are insured in practical perpetuity, underwritten, as they are, by the entire Public Service system," and enjoined the proposed merger. ( , affirmed ). On May 10, 1937, the directors of South Jersey and of Public Service, at separate meetings, adopted a "Plan of Reorganization," under which it was proposed that South Jersey "be merged, in accordance with the statutes of the State of New Jersey, into Public Service." The terms of the proposed merger were stated to be as follows: * * * that the stockholders of South Jersey Gas, Electric and Traction Company (other than Public Service Electric and Gas Company) shall exchange their stock (having a par value of $100 per share) for First and Refunding Mortgage Bonds 8% Series due 2037 of Public Service Electric and Gas Company, (to be issued under the First and Refunding Mortgage made by said Public Service Electric and Gas Company to Fidelity Union Trust Company and dated August 1, 1924, and a Supplemental *225 Indenture to be dated June 1, 1937), of a face value equal to the par value of such stock, which bonds will be dated June 1, 1937, and mature on June 1, 2037, and which bonds will bear interest at the rate of 8% per annum from the first day of June or the first day of December next preceding the effective date of this Agreement of Merger and to which date dividends have been paid upon said stock and which bonds will not be subject to redemption. Immediately after such exchange becoming effective, all of the stock of South Jersey Gas, Electric and Traction Company, including the stock owned by Public Service Electric and Gas Company, will be cancelled. The plan was an attempt on the part of Public Service to acquire in fee the franchises and properties of South Jersey in a manner consistent with the opinion of the New Jersey courts. On the same day, May 10, 1937, the directors of South Jersey and of Public Service approved the execution of what was designated by them as "Agreement of Merger," which embodies the above-described terms. The "Agreement of Merger" provided that Public Service was to continue and remain a corporation full possessed of all property, powers, and authority *226 possessed by it on the effective date of the agreement, "no new corporation being hereby formed, but the party of the first part [South Jersey] being absorbed by and merged into the party of the second part [Public Service]." The "Agreement of Merger" further provided as follows: 1. The capital stock of the Public Service Electric and Gas Company, party of the second part, will not be changed by reason of this agreement. * * * * *
3. No new stock, securities or obligations shall be issued in exchange for the capital stock of South Jersey Gas, Electric and Traction Company, party of the first part, which may be owned by the Public Service Electric and Gas Company, party of the second part, when this agreement becomes effective, but the same shall be delivered up and cancelled. * * * * *
5. Upon this agreement becoming effective, Public Service Electric and Gas Company, party of the second part, will, pursuant to the provisions of its aforesaid First and Refunding Mortgage, dated August 1, 1924, execute an indenture supplemental thereto to the Trustee thereof, conveying, transferring and assigning to said Trustee all of the property and franchises of the party of the first part *227 hereto, for the purpose of subjecting said property and franchises to the lien of said First and Refunding Mortgage, dated August 1, 1924, for the benefit of all bonds issued thereunder, with the same force and effect as though said property and franchises were included in the granting clauses of said mortgage. At separate special meetings held after due notice on June 7 and June 8, 1937, the stockholders of South Jersey and of Public Service approved the "Agreement of Merger." On August 11, 1937, the "Agreement of Merger" was approved by the Board of Public Utilities Commissioners of the State of New Jersey, and on November 1, 1938, it was approved by the Federal Power Commission. The "Agreement of Merger," together with certificates of the Secretaries of South Jersey and of Public Service relative to the votes of their respective stockholders and the certificate of approval of the Board of Public Utilities Commissioners of the State of New Jersey and the order of approval of the Federal Power Commission, was filed with the Secretary of State of the State of New Jersey on November 17, 1938. The "Agreement of Merger" was consummated pursuant to its terms. Public Service turned *228 over to the trustee $5,829,400 in bonds 8 percent Series due June 1, 2037. On or about November 25, 1938, stockholders of South Jersey exchanged their stock totaling 58,274 shares having a par value of $5,827,400 for an equal principal amount of the bonds which were not redeemable before maturity. The exchange did not include the abovementioned one share of stock of which the owner was unknown and no bond has ever been issued therefor. Public Service did not exchange its stock in South Jersey for bonds. The holders of 20 shares of South Jersey stock have not as yet turned in their stock for exchange. All of the stock of South Jersey, including the 1,705 shares held by Public Service, and excepting the 20 shares, was thereupon cancelled. Pursuant to this transaction petitioner received in exchange for his 166 shares of New Jersey stock $16,600 principal amount of the 8 percent bonds. On November 17, 1938, and on November 25, 1938, the bonds received by petitioner had a fair market value of $34,777. Respondent determined that the difference between the basis of petitioner's stock in South Jersey and the fair market value of the bonds received in exchange therefor must be recognized *229 as taxable income in 1938. [Opinion] When the statutory definition of a reorganization for purposes of the non-recognition section included "a merger or consolidation," the courts interpolated an implicit and unexpressed modification, calling for a showing of "continuity of interest" to distinguish a true reorganization from a sale. , certiorari denied, ; ; see . Merely because the applicable revenue act, as a result of legislative reconsideration in 1934 now [1] speaks rather of a "statutory" merger or consolidation, it is urged that this basic principle may be abandoned. *230 We take a different view. Nothing that appears in the legislative history of the revision justifies such a conclusion. We agree with petitioner that "it is significant that the amendments in that [1934] act were approached from the point of view of closing loopholes and of eliminating tax avoidance." If, therefore, a transaction would have been taxable under the earlier legislation, there is no ground for supposing that Congress intended to release it by the modified language. And, we are referred to no authority for any such proposition as that a continued proprietary interest would have been any the less a requirement under the prior acts merely because the transaction consisted of a true technical merger. On the contrary, as petitioner observes in his brief: The basic and perhaps the best exposition of the continuity of interest doctrine is found in In that case the court said (p. 940): When subdivision (h)(1)(A) included in its definition of "merger or consolidation" the acquisition by one corporation of * * * substantially all the properties of another," it did this so that the receipt of *231 property by the corporation surviving the merger might serve to effect a reorganization, as does an acquisition of stock. Each transaction presupposes a continuance of interest on the part of the transferor in the properties transferred. Such a limitation inheres in the conventional meaning of "merger and consolidation." and is implicit in almost every line of section 203 which we have quoted. In , the Court of Appeals of the Fifth Circuit decided that a transaction almost exactly like the present was not a "merger or consolidation," but a mere sale carrying no exemption. Judge Groner's opinion in , is in accord. In defining "reorganization," section 203 of the Revenue Act gives the widest room for all kinds of changes in corporate structure, but does not abandon the primary requisite that there must be some continuity of interest on the part of the transferor corporation or its stockholders in order to secure exemption. Reorganization presupposes continuance of business under modified corporate *232 forms. If it may be thought to have constituted the subject of particular consideration, the assumption is rather than Congress intended its use of the term "statutory merger or consolidation" to be limited to the type of situation described in the succeeding portions of the definition where the requirement of a control or proprietary interest is specified in precise terms. For present purposes, however, we need not proceed to those lengths. We accept the transaction, by which the stock of South Jersey was exchanged for bonds of Public Service, as a true statutory merger under the law of the State of New Jersey. It must still face the requirement read into every such definition that there be a continuity of interest, and only then does it become such a reorganization as will satisfy the requirements of the non-recognition provisions. , affirmed (C.C.A., 4th Cir.), . This brings us to a consideration of petitioner's further assertion that under the present facts the requisite continuity may be discovered. South Jersey owned property which it had leased in 1903 to *233 the predecessor and parent of Public Service for 900 years under terms which virtually insured that the properties would be adequately maintained, and that over and above all expenses of overhead South Jersey would be enabled to pay an annual cash dividend to its stockholders of 8 per cent. After vicissitudes and tribulations which need not be again detailed Public Service succeeded in effectuating in the tax year before us a merger by which the properties in question could be taken over by it, the lease eliminated, and its 8 per cent 100-year bonds could be distributed to South Jersey's stockholders in exchange for their stock. We are told that the position of the South Jersey stockholders prior to the merger was not essentially different from their rights as bondholders thereafter, and, consequently, that as far as they had any interest, that interest was continued in the merged enterprise. For this proposition, petitioners regard , affirmed (C.C.A., 2nd Cir.), , as authority. But this is to our mind no more than an articulation of the same problem in a different aspect. *234 To constitute a statutory reorganization the requirement of continuity relates to the proprietary or ownership interests typically represented by common shares. Cf. ; . By no means all of the attributes of equity ownership were relinquished by South Jersey's stockholders when they granted the lease. The rights and powers which South Jersey was in a position to enforce against Public Service may not have been materially at variance with those of a corporate bondholder. But there remained to South Jersey, at least, the characteristic privileges of ownership, including a choice of the alternatives that its property and assets - subject, it is true, to the lease, but including the rights granted to it thereunder - could have been retained or disposed of, and the avails of the property withheld or distributed, invested or disbursed, as the corporation pursuant to the decision of its stockholders should determine. The conglomerate of powers and privileges constituted of the customary controls over property *235 are what we ordinarily regard as proprietary interests, and, as we have said, it is the continuity of this type of interest that is called for by the reorganization definition. In the Neustadt case they were continued in the same stockholders since "no change in ownership of the capital stock was proposed." Here, as there was no mere recapitalization, they disappeared from South Jersey and its stockholders and were swallowed up in the new enterprise in which the former shareholders had no voice. Cf. . It follows that no continuing stake in the merged enterprise was retained by South Jersey or its stockholders, and hence that the requisite continuity of interest is not furnished either by the proprietary interests acquired by the merged corporation, nor by the bondholders' status conferred upon the former shareholders. Nothing in [2] militates against this view. There transfer and liquidation were found to require no recognition of gain or loss. But the ultimate ownership of the transferred properties remained the same. Those who were stockholders remained *236 stockholders. Here the proprietary interest which petitioner and his associates enjoyed in the lease and its constituent property was exchanged for the mere right of a creditor. This seems to us no more a tax-free transaction than would be the case if the owners of a safe investment were to turn it into a newlyorganized corporation in exchange not for the stock of the new enterprise but for its bonds. Cf. Revenue Act of 1938, section 112(b)(5). We are in accord with the Commissioner's determination. Decision will be entered under Rule 50. Footnotes
1. Revenue Act of 1938, Section 112 (g) (1). "(G) DEFINITION OF REORGANIZATION. - As used in this section and section 113 - (1) The term 'reorganization' means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock; of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholdes or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected."↩
2. Affirmed sub nom. Commissioner v. ; affirmed sub nom. ↩.